12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-2 ELFAT NADIM EL AOUAR,
a/k/a "Elfat Aouar,"
a/k/a "Elfat Nadim Wymer,"
a/k/a "Elfat Chahine,"
a/k/a "Lola,"

Defendant.
_______________________________/

CRIMINAL NO. 07-20156

HON. AVERN COHN

VIO. 18 U.S.C. § 371
18 U.S.C. § 1425

**THIRD SUPERSEDING INFORMATION**

THE UNITED STATES ATTORNEY CHARGES:

**General Allegations**

1. On September 13, 1988, ELFAT NADIM EL AOUAR, also known as "Elfat Aouar," also known as "Elfat Nadim Wymer," also known as "Elfat Chahine," also known as "Lola," defendant herein, first entered the United States from Lebanon on a six month non-immigrant visitor visa, which was extended once to June 11, 1989.

2. After defendant's visa expired on June 11, 1989, she remained in the country residing in Taylor, Michigan with her sister, Nada Nadim Prouty, also known as "Nada Nadim Al Aouar," also known as Nada Nadim Deladurantaye," also known as "Nada Nadim Alley," not named as a defendant herein, and Samar Khalil Nabbouh, also known as "Samar Khalil Spinelli," not named as a defendant herein.

3. On an unknown date between June 11, 1990 and November 15, 1990, while having overstayed her visa, defendant offered money to an unemployed United States citizen to marry her, expressly for the purpose of remaining in the United States and evading U.S. immigration laws.

4. On November 15, 1990, defendant married the U.S. citizen in a civil ceremony in Detroit, Michigan. As planned, defendant never lived as husband and wife with her fraudulent "husband" and the marriage was never consummated sexually. Rather, defendant continued to live with Nada Nadim Prouty and Samar Khalil Spinelli.

5. Between November 29, 1990 and March 28, 1995, ELFAT NADIM EL AOUAR, then known as "Elfat Wymer," defendant herein, submitted a series of written statements under oath to immigration authorities purporting to verify the validity of the fraudulent marriage.

6. On January 27, 1993, Nada Nadim Prouty, not named as a defendant herein, had her boyfriend write a letter for submission into defendant's immigration file falsely claiming that defendant and her "husband" resided together and that the boyfriend was "good friends" with the husband.

7. On February 1, 1993, defendant forged the signature of her fraudulent husband on Form I-751, Petition to Remove the Conditions on Residence under penalty of perjury and just below a certification that the marriage "was not for the purpose of procuring an immigration benefit."

8. On April 27, 1995, ELFAT NADIM EL AOUAR, defendant herein, procured her United States citizenship under the name "Elfat Nadim Wymer."

9. On June 30, 1995, ELFAT NADIM EL AOUAR, defendant herein, caused to be filed in the Wayne County, Michigan, Circuit Court a Complaint for Divorce wherein she falsely alleged that she and her fraudulent husband "lived and cohabited together as husband and wife until on or about April 3, 1995."

10. On or about, December 6, 1995, Defendant obtained a U.S. Passport based upon her fraudulently obtained U.S. Citizenship, and thereafter renewed it when required.

11. At various times between March 1, 1997 and April 28, 2006, defendant traveled to, from and outside the United States on a U.S. Passport.

**COUNT ONE**
**(Conspiracy – 18 U.S.C. § 371)**

D-2 ELFAT NADIM EL AOUAR

The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

From on or about April 10, 1990 through the date of this Information, within the Eastern District of Michigan, Southern Division, and elsewhere, ELFAT NADIM EL AOUAR, defendant herein, conspired and agreed together with Nada Nadim Prouty, and others both known and unknown to the United States Attorney:

1) to defraud the United States of valuable benefits of U.S. citizenship including U.S. passports and U.S. government employment; and

2) to commit the following offenses against the United States:

a. Marriage Fraud in violation of 8 U.S.C. § 1325(c);

b. Naturalization Fraud in violation of 18 U.S.C. § 1425(a);

c. Perjury in violation 18 U.S.C. § 1546;

d. False Statements Under Oath in Naturalization Proceedings in violation of 18 U.S.C. § 1015(a);

e. Use of Fraudulently Procured Proof of U.S. Citizenship in violation of 18 U.S.C. § 1015(c);

f. False Statements to Government Agents in violation of 18 U.S.C. § 1001; and

g. Use of Fraudulently Procured U.S. Passports in violation of 18 U.S.C. § 1542.

**Ways, Manner and Means**

The ways, manner and means of the conspiracy are described as follows.

It was part of the conspiracy that ELFAT NADIM EL AOUAR, defendant herein, and other co-conspirators, entered the United States from Lebanon on a non-immigrant student or visitor visa.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, overstayed their non-immigrant visas or otherwise failed to depart the United States as scheduled on their visa.

It was further a part of the conspiracy that the alien members of the conspiracy, including ELFAT NADIM EL AOUAR, with the assistance of one another, located U.S. citizens willing to marry them in exchange for money.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, entered into marriages with the hired U.S. citizens in name only, having no intention of living together as husband and wife and solely for purposes of evading U.S. immigration laws.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, caused their U.S. citizen husbands to sign immigration documents under oath verifying the validity of the fraudulent marriages and falsely claiming to be residing with their wives.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, resided together at the same address both before and after their marriage ceremonies.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, in coordination with one another, falsified letters claiming to know their fraudulent husbands and verifying the legitimacy of the fraudulent marriages.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, in coordination with one another, forged letters by real or fictional individuals purporting to verify the legitimacy of the fraudulent marriages.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, in coordination with one another, forged the signatures of their fraudulent husbands on official immigration documents.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, served as references for one another to backstop any inquiries into their fraudulent marriages.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, obtained documentation permitting them to permanently live and reside in the United States.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, traveled internationally in and out of the United States once they had obtained permission to permanently live and reside in the United States.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, obtained United States citizenship and naturalization certificates as proof of their citizenship.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, in coordination with one another, divorced their fraudulent U.S. citizen husbands shortly after obtaining their naturalization certificates.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, in coordination with one another, caused documents containing false statements attesting to the validity of the marriages to be submitted to the Wayne County (Michigan) Circuit Court to effectuate divorce proceedings. Like the marriages and immigration file submissions, the divorces were coordinated, timed, and scripted, utilizing the same mailing address and the same attorney.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, utilized their naturalization certificates to obtain U.S. passports permitting them to travel internationally as U.S. citizens.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and other co-conspirators, utilized their U.S. passports to travel to various countries around the world as U.S. citizens.

It was further a part of the conspiracy that ELFAT NADIM EL AOUAR, and her co-conspirators, utilized their naturalization certificates and U.S. passports, as proof of their U.S. citizenship, to, among other things, obtain U.S. government employment only available to U.S. citizens, including employment as a Special Agent of the Federal Bureau of Investigation, an employee of the Central Intelligence Agency, and a commissioned officer in the U.S. military, and to obtain security clearances and access to sensitive U.S. government secrets, sources and methods not otherwise available to them.

**Overt Acts**

In furtherance of the conspiracy, and to effect the objects thereof, ELFAT NADIM EL AOUAR, defendant herein, and her co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 stating that her divorce from her first marriage was due to

"irreconcilable differences."

    2. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 referencing her naturalization certificate number as proof of her U.S. citizenship.

    3. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 listing Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," not named as a defendant herein, as a reference.

    4. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 stating that she was not "aware of any information about [her]self or any person with whom [she is or has] been closely associated (including relatives and roommates) which might tend to reflect unfavorably on [her] reputation, morals [or] character . . . ."

    5. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 referencing the naturalization certificate number of defendant.

    6. While applying for employment with the Federal Bureau of Investigation, on or about April 21, 1997, Nada Nadim Prouty, then known as "Nada Nadim Alley," signed Form FD-140 listing ELFAT NADIM EL AOUAR, defendant herein, as a reference.

7. On October 7, 1998, ELFAT NADIM EL AOUAR, defendant herein, was interviewed by the FBI as part of defendant Nada Nadim Prouty's background check, providing no derogatory information to the FBI notwithstanding her knowledge of Nada Nadim Prouty's fraudulent marriage, naturalization fraud and participation in this conspiracy.

8. On or about September 11, 1998, Nada Nadim Prouty, then known as "Nada Nadim Alley," told FBI Special Agent John Camera that she was concealing no matters in her background which could be used for purposes of pressuring or influencing her.

9. On or about October 15, 1998, Samar Khalil Spinelli, also known as "Samar Khalil Nabbouh," not named as a defendant herein, told an FBI Special Agent that she was not aware of any activity or conduct in the background of Nada Nadim Prouty, then known as "Nada Nadim Alley," which could be used in any way to subject defendant to influence, pressure, coercion or compromise, or which would negatively reflect upon defendant's character.

10. On or about October 15, 1998, Talal Khalil Chahine, not named as a defendant herein, told a FBI Special Agent that he was not aware of any activity or conduct in the background of Nada Nadim Prouty, then known as "Nada Nadim Alley," which could be used in any way to subject defendant to influence, coercion or compromise, or which would negatively reflect upon her character.

11. While applying for employment with the Central Intelligence Agency (CIA), on or about February 15, 2003, Nada Nadim Prouty, signed Form SF-86

referencing her naturalization certificate number as proof of her U.S. citizenship.

12. While applying for employment with the CIA, on or about February 15, 2003, Nada Nadim Prouty, signed Form SF-86 referencing her fraudulent marriage and identifying her fraudulent husband as a former "spouse."

13. While applying for employment with the CIA, on or about February 15, 2003, Nada Nadim Prouty, signed Form SF-86 referencing the naturalization certificate number of her sister, ELFAT NADIM EL AOUAR, defendant herein, as proof of her sister's U.S. citizenship.

All in violation of Title 18, United States Code, Section 371.

**<u>COUNT TWO</u>**
**(Naturalization Fraud – 18 U.S.C. § 1425)**

D-1 ELFAT NADIM EL AOUAR

The general allegations set forth above are hereby incorporated by reference as if fully set forth herein.

On or about April 27, 1995, within the Eastern District of Michigan, Southern Division, and elsewhere, ELFAT NADIM EL AOUAR, defendant herein, knowingly procured, and attempted to procure, contrary to law, her own naturalization as a

United States citizen, all in violation of Title 18, United States Code, Section 1425(a).

                                    STEPHEN J. MURPHY
                                    United States Attorney

                                    ERIC M. STRAUS
                                    Chief, National Security Unit

                                    KENNETH R. CHADWELL
                                    Assistant United States Attorney

                                    MARK J. JEBSON
                                    Special Assistant U.S. Attorney

Dated: November 28, 2007

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>07-20156 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: Avern Cohn |
| ☐ Yes ☒ No | AUSA's Initials: KRC |

**Case Title:** USA v. ELFAT NADIM EL AOUAR

**County where offense occurred :** Wayne

**Check One:** ☒ **Felony** ☐ **Misdemeanor** ☐ **Petty**

____Indictment/_X_Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information:

**Superseding to Case No: 07-20156** **Judge: Avern Cohn**

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges |
|---|---|
| D-2 Elfat Nadim El Aouar | 18 U.S.C. §371-Conspiracy<br>18 U.S.C. § 1425-Procurement of citizenship or naturalization unlawfully |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

November 28, 2007
Date

KENNETH R. CHADWELL
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9698
Fax: (313) 226-4679
E-Mail address: kenneth.chadwell@usdoj.gov
Attorney Bar #: P39121

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.